Dissent of
Judge Mills.
The history of this case may be thus abridged: A •receipt of a sheriff, for fines put into his hands to collect, came into the hands of the paymaster of a regiment. As was his duty, he prosecuted the sureties of the sheriff, lie being dead, and recovered the money, and in still further prosecution of iiis duty, paid out the sum collected, in obedience to the orders of courts martial and the commandant of the regiment. It has since been discovered that the same fines were accounted for to a former paymaster, by a sheriff appointed as successor to the deceased sheriff, and appropriated by such previous paymaster, in discharge of the debts due by the regiment. Since then, new fines have been assessed upon the delinquents of said regiment, which are in a train of collection, arid which are .already appropriated by law, to discharge the current ex-pences of the regiment, according as the courts martial and commandant shall order.
Although, in former years, a sum of money has been recovered by, and appropriated to discharge the debts of the regiment, it must be evident that neither the courts martial nor commandant have any power by law, to appropriate the present fines for the purpose of restoring this money formerly recovered by mistake. The reason is obvious. The present fund is raised for particular purposes, which are pointed out by law, and which circumscribe the duties of the present courts martial and commandant, and among (hose purposes the restoration of the money so wrongfully recovered formerly has no place, and the present courts and commandant have no power or direction by law to make such appropriation. If they had, and refused to do so, no reason is perceived, why the law does not furnish an adequate remedy, without resorting to a court of equity. They must be subject to mandamus, to compel such appropriation, if any remedy exists; and the right or power of the chancellor, exercised, not to compel them to appropriate, but to appropriate at once, and direct the present collected fund to go in a channel contrary to law, is seriously contested. It is permitting the *344 chancellor to change the appropriation made by law, t0 substitute the powers of the courts martial and regimental commandants, or allowing him to act as a revising court, over their transactions. Indeed, the former is more properly the case; for the hill and whole proceedings had, are not predicated on the ground that the courts martial and commandant have refused, and therefore the chancellor must interfere; hut the ground of equity is predicated on the fact that the present funds now in collection are apprepriated by law to other purposes, and that if they once come under the power of the courts martial or commandant, they must go to those other debtors to whom they are due f>v law, on account of the expences ofthe regiment payable by law. It is, then, asking the chancellor to prevent the commandant and courts martial from doing what by law they are bound to do, to dispense wit!) the statutes which speci'y the purposes to which the fines are to go, because formerly the complainants were wronged by the innocent and mistaken acts of the officers of the regiment, while they supposed they were doing their duty. Such a power, it is conceived, does not belong to the chancellor.
If any decree ought to be here rendered in favor of the complainants, it ought to be either against the paymaster individually, or in rent, against the funds of the regimentsince assessed and now collected. A decree against the paymaster individually, it is admitted, cannot he made. Even the bill itself does not ask it. It charges him with no act calculated to reach his own estate. If he had known that the former fines collected by him had been collected by a former paymaster, and had abused his office and the process of law, so far as again to recover from the ignorant ami innocent sureties of the sheriff, the money a second time, for his own emolument, there could he no hesitation in compelling him to restore if. He, however, has done no such thing, and therefore no suit subjecting him individually will lie. If, then, the paymaster himself cannot be individually made liable, what inference favorable to the suit can he drawn from the fact that the legislature has required him to give bond and security, and made him suable thereon? If he does give bond, it is to hind him to perform his duty as directed by law, and not the decrees of the chancellor. If he can be sued upon *345 bond, it is to make him individually responsible; and in all the suits against him, directed or hinted at by the statute, he is to be individually responsible for failure of duty, and no judgment can be rendered against him in his character of paymaster, for the funds of the regiment. What argument, then, can be drawn from this circumstance, to sustain a suit confessedly not against him individually? If he is suable individually for those breaches, does it follow that he is suable as garnishee holding the regimental funds? If his own estate is subjected, does it follow that the funds of the regiment can be subjected also? It is conceived, then, that his liability to suit individually, furnishes no ground for reaching the funds of the regiment.
As the paymaster is not individually liable, and as the subjecting him to suit cannot subject the funds of the regiment, the question remains, can those subsequently assessed, and now collected funds of the regiment, be subjected by a decree? It is conceived not. The regiment itself is a body capable of constant succession and change, both as to officers and men. Individually, therefore, it may now be wholly different from what it was when the money formerly collected wrongfully discharged it debts. The individuals composing a regiment, have no interest in the fines collected. They are generally assessed and collected in invito, and the creditors who contract on the credit of the fund created by fines, in military services, have the only interest. If the regiment itself had formerly received any individual benefit from the appropriation of money wrongfully collected, there might be some colour of equity for saying that the fund now collected for their benefit should be appropriated to the benefit of the former sufferei’s, who were compelled to pay the money wrongfully; but as the former and present fund both are not for the benefit of the regiment, no equity exists against the regiment itself. Nor is there any connexion perceived, or latent equity existing between the two sums, to wit, that wrongfully collected and appropriated, and that collected now for specific purposes. Surely no secret lien can follow and attach itself to subsequent fines. They are entirely distinct. One was wrongfully gotten, and given to a then existing class of creditors; the other is assessed and collected *346 for another and different class. There is no connexion, ^en? on which a decree can be founded.
If a county court, in laying its levy, should refuse to allow a claim palpably just and equitable, which it had the power to allow, but did not, and proceeded to lay the county levy only adequate to satisfy other claims ■which might arise, could the chancellor, in such case, sustain a bill, and seize upon the money laid, and divert it from other creditors, to satisfy this just but rejected claim? It is conceived not, and the case is stronger than the one before the court; for here, it is strenuously insisted that neither the commandant nor court martial have any power to allow this claim out of the present fines, as the county court has, in the case supposed, and the control of the chancellor is not greater over a regiment, than over the county court. The treasurer keeps the money of the state, and gives bond and security for appropriating it as directed by law, and it is subject to suit individually, for failing to 'do so; but this does not give the chancellor any power to decree the money itself to other^purposes. The auditor may be said to keep the key of the treasury, and gives bond and security not to open it contrary to law. He may be made responsible individually, for an abuse or breach of his duties; but this does not give the ■chancellor a power to decree him to open it, and to pay a just debt due from the state. If he refuses, when he ought, a mandamus may reach him; but if, on the return thereof, it appeared he had no authority to do so, in satisfaction of the claim, the process would end. The truth is, the legislature has not directed, as the constitution requires, in what court, or how suits are to be brought against the commonwealth; and as the commonwealth cannot be sued in mass, so it is not subject to suit in detail; that is, the various bodies constituted for political purposes, cannot be sued, although, by mandamus, they may, in some instances, be reached and compelled to execute the laws of the land; yet none of them ought to be compelled, by a court of equity, to do what the law does not authorise. Counties have their police regulated by justices of the peace, who, in the county court, represent the county. The money collected and to be expended for that purpose, is not brought to the treasury. Companies, battalions, regiments, brigades and divisions are bodies politically *347 constituted for military purposes, and each expends what is necessary to keep them up, by á police regula-H ted without carrying the money to the treasury, and then taking it back. These bodies ought not to be compelled to pay by suits of this nature. If they, by mistake, wrong individuals, while doing their duty, the legislature is competent to point out the fund and redress the injury, and all just governments will grant such redress. However strong, then, the equity may be, I would turn the party, in this instance, to that department of government, as the most proper to afford redress; and I cannot concur in the opinion that the chancellor has any power over the subject.